IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| SMARTMATIC USA CORP., SMARTMATIC INTERNATIONAL HOLDING B.V., and SGO CORPORATION LIMITED,<br><br>Plaintiffs,<br><br>v.<br><br>MICHAEL J. LINDELL and MY PILLOW, INC.,<br><br>Defendants. | Case No. _____<br>[D. Minn. Case No. 22-cv-0098-WMW-JFD]<br><br>**DEFENDANTS' MEMORANDUM IN SUPPORT OF MOTION TO COMPEL COMPLIANCE WITH DEPOSITION SUBPOENA TO JOHN NEGROPONTE** |

**Defendants' Memorandum in Support of Motion to Compel
Compliance with Deposition Subpoena to John Negroponte**

Michael Lindell and My Pillow, Inc. (together, "Defendants") move the Court to order John Negroponte to appear for a deposition, in compliance with a subpoena issued by the Defendants in this action. The Government has asserted objections to the subpoena based on the doctrine of *Touhy v. Ragen*, 340 U.S. 462 (1951). However, the testimony sought by the subpoena is important to Defendants' defenses in this action, and *Touhy* is not appropriately applied under these circumstances.

   **I.**   **Facts**

Plaintiffs (collectively, "Smartmatic") sell technology and software used to administer elections. First Supp. Compl. ¶ 10 (Decl. of Andrew D. Parker ¶ 2 & Ex. A) ("Complaint"). Smartmatic has asserted defamation claims against Defendants based on statements made by Lindell about the 2020 presidential election. *Id*. ¶ 367. According to the Complaint, Lindell stated that Smartmatic's election technology and software was compromised or hacked by foreign actors during the 2020 presidential election. *Id*.

1

Lindell's statements about the 2020 election being hacked were based in part on information Lindell received about the work of Dennis L. Montgomery. Decl. of Michael Lindell ¶ 2; *see* Compl. ¶ 309 (allegations concerning "Hammer" and "Scorecard"). Lindell received information from other people, and then directly from Montgomery, that many years ago Montgomery had provided computer programming services to the United States government, when Montgomery worked for two companies that contracted with the United States government. Lindell Decl. ¶¶ 2-3. Montgomery was a co-owner of one of these companies. *Id.* ¶ 2. Lindell heard that at these companies Montgomery had developed and used computer software that allowed the federal government to monitor internet communications and to manipulate computerized voting machines used in foreign countries. *Id.* Lindell heard that Montgomery's election-manipulating software was obtained by persons in China, and that Montgomery obtained copies of internet transmissions showing the software was used by persons in China to change votes in the 2020 presidential election. *Id.* Montgomery's history of working for the United States government was one of the reasons Lindell believed the information he heard about Montgomery. *Id*. ¶ 4.

In August 2022, Montgomery executed a declaration filed in federal court describing in part his work for the United States government. Parker Decl. ¶ 3 & Ex. B. The declaration testified that Montgomery formed eTreppid Technologies, LLC in 1998 with a business partner, *id*. ¶ 8; that Montgomery provided software development for the company, which contracted with the federal government to provide software development services, *id*. ¶¶ 8-10; and that the company entered into contracts with the Department of Defense, Central Intelligence Agency, Air Force, and Department of Homeland Security, *id*. Montgomery further testified that "Voting machine manufactures communications and intellectual property we hijacked by us gov

2

numerous times over the years I worked in FBI/CIA/NSA surveillance programs," and he has demonstrated his programs performing "election monitoring and interference" and "hacking into voting machines manufactures and their equipment with ease." *Id*. ¶¶ 25, 28. The declaration testified that "The DOJ was interested in the use of the 'eTreppid/Blxware' technology that could surveil and interfere in elections, foreign and domestic leaving no trace." *Id*. ¶ 33. The declaration testified that Montgomery had turned over to the government data showing "US voting machine manufactures and their employees were hacked several times," including "Dominion Voting Systems Corp." and "Smartmatic USA Corporation," and that Montgomery's technology collected data transmitted during the 2020 election. *Id*. at ¶¶ 38, 40.

In 2006, a dispute arose between Montgomery and his business partner concerning eTreppid Technologies, Inc. *See* Parker Decl. ¶ 4 & Ex. C (Complaint of Dennis Montgomery). Two lawsuits resulted: *eTreppid Technologies, LLC v. Montgomery* and *Montgomery v. eTreppid Technologies, Inc.* (together, the "eTreppid Litigation").[1] The United States government sought and obtained entry of a protective order in the eTreppid Litigation based on its assertion of the state secrets privilege. *See* Parker Decl. ¶ 5 & Ex. D (Motion); Parker Decl. ¶ 6 & Ex. E (Order); Parker Decl. ¶ 7 & Ex. F (Protective Order). The government's motion seeking the protective order in the eTreppid Litigation asked the Nevada court to enter a protective order because "the United States has properly asserted the military and state secrets privilege in these cases," and "the information to be protected from disclosure includes information concerning the existence or non-existence of any actual or proposed relationship involving any U.S. intelligence agency and any individuals and/or companies associated with these lawsuits and any actual or proposed interest in, application of, discussion of, or use by an intelligence agency of any technology

---

[1] These are no. CV-N-06-00145 and no. CV-N-06-00056 in the U.S. District Court for the District of Nevada.

owned or claims by individuals and/or companies associated with these lawsuits." Parker Decl. Ex. D at 12-13.

The Government's motion relied for its factual basis on two declarations: the Declaration of John D. Negroponte and a "classified in camera, ex parte declaration." *Id*. at 2-3 & n.2. The Negroponte Declaration stated that its purpose was to "assert formally . . . the state secrets privilege to protect intelligence information." Parker Decl. ¶ 8 & Ex. G ¶ 3. It stated that Negroponte, "[a]fter personal consideration of the matter" determined that the "classified *ex parte, in camera* declaration which accompanies this assertion of the state secrets privilege" contained information that "reasonably could be expected to cause serious, and in some cases exceptionally grave damage to the foreign policy and national security of the United States." *Id*. ¶ 8. It stated that after "careful and actual personal consideration of the matter," Negroponte determined that "unauthorized disclosure of certain information that may be implicated by the parties' claims in this matter" could damage the national security of the United States. *Id*. ¶ 9. The relevant information concerned "(a) the existence or non-existence of, any actual or proposed relationship, agreement, connection, contract, transaction, communication, or meeting of any kind between any entity in the United States Intelligence Community, or any current or former official, employee, or representative thereof, and any individuals or entities associated with this lawsuit, on any current or former officer or employee thereof; and (b) any actual or proposed interest in, application, or use by any entity in the United States Intelligence Agency, or any current or former official, employee, or representative thereof, of any technology, software, or source code owned or claimed by any individuals or entities associated with this lawsuit." *Id*. ¶ 11.

On August 29, 2007, the Nevada District Court entered the protective order sought by the Government, Parker Decl. Ex. F ("Nevada Protective Order"), stating that the court had reviewed "in camera" a "Classified Declaration" from the Director of National Intelligence, and that information from the filings in the eTreppid Litigation was redacted on the basis of the state secrets privilege, Parker Decl. Ex. E at 2.

The facts set forth above show that Lindell's defenses against the defamation claims brought against him by Smartmatic are greatly strengthened by information concerning the software work Montgomery performed for the federal government while at eTreppid. Montgomery's past and work for the federal government provided Lindell with substantial reason to believe the information he received about and from Montgomery. Information about Montgomery's past and work for the federal government tends to support the accuracy of the statements Lindell made. The testimony of Negroponte is an important part of the eTreppid evidence Lindell seeks to discover, and Lindell knows that Negroponte possesses relevant information, as a result of the Negroponte Declaration.

In this action, Defendants issued a subpoena to Negroponte ("Negroponte Subpoena") to provide a deposition. Decl. of Andrew Parker ¶ 9 & Ex. H. Attached to the Negroponte Subpoena was a statement explaining why the *Touhy* factors permitted the deposition of Negroponte in this case. Decl. of Andrew Parker Ex. H at Ex. A. The subpoena was served upon Negroponte on July 13, 2023. Parker Decl. Ex. I. On July 26, 2023, Defendants received responsive correspondence from the Office of the Director of National Intelligence refusing to allow the testimony sought by the Negroponte Subpoena on the basis of the principles articulated in *Touhy v. Ragen*, 340 U.S. 462 (1951). Parker Decl. ¶ 10 & Ex. J.

## II. Argument

The information sought by the subpoena to Negroponte is important to the Defendants' defenses and is reasonably capable of being provided by Negroponte without undue burden. Accordingly, Negroponte should be compelled to provide deposition testimony in this case.

### A. Legal Standard

Fed. R. Civ. P. 45 provides the standard governing a federal agency's response to a subpoena issued to an agency employee in a federal civil suit. *Watts v. SEC*, 482 F.3d 501, 505 (D.C. Cir. 2007) ("Rule 45's privilege and undue burden standard thus applies to both document and testimonial subpoenas . . . . Moreover, an agency's *Touhy* regulations do not relieve district courts of the responsibility to analyze privilege or undue burden assertions under Rule 45."). *See* 5 U.S.C. § 301 (authorizing *Touhy* regulations but providing, "This section does not authorize withholding information from the public or limiting the availability of records to the public."). Under Rule 45, "The burden lies on the party resisting discovery to show that the documents requested are either unduly burdensome or privileged." *Buzzfeed, Inc. v. United States Dep't of Justice*, 318 F. Supp. 3d 347, 356 (D.D.C. 2018) (quoting *In re Micron Tech., Inc. v. Sec. Litig.*, 264 F.R.D. 7, 9 (D.D.C. 2010)).

Two principles guide the Court in determining whether a subpoena would impose an undue burden on the Government. The Court must be "generally sensitive to the costs imposed on third parties," *Buzzfeed,* 318 F. Supp. 3d at 358, and the Court must consider the factors under Fed. R. Civ. P. 26(b) including:

> (1) whether the discovery sought is 'unreasonably cumulative or duplicative'; (2) whether the discovery sought 'can be obtained from some other source that is more convenient, less burdensome, or less expensive'; and (3) whether the discovery sought is 'proportional to the needs of the case,' taking into account 'the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the

importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit.'

*Id*. (quoting Fed. R. Civ. P. 26(b)(1)).

### B. Negroponte Should Be Required to Provide Deposition Testimony.

The Rule 26(b) factors show that Negroponte should be required to provide deposition testimony in this case. Defendants seek to obtain testimony in admissible form confirming facts surrounding Montgomery's work for the government. Negroponte's involvement in the eTreppid Litigation and the facts underlying that involvement relate to the important questions of whether Lindell's statements concerning Montgomery and the 2020 election are true, whether Lindell believed what he said, and whether it was "inherently improbable" for him to believe this. *See St. Amant v. Thompson*, 390 U.S. 727, 732 (1968) ("The finder of fact must determine whether the publication was indeed made in good faith. Professions of good faith will be unlikely to prove persuasive, for example, where a story is fabricated by the defendant, is the product of his imagination, or is based wholly on an unverified anonymous telephone call. Nor will they be likely to prevail when the publisher's allegations are so inherently improbable that only a reckless man would have put them in circulation."). These matters are important to the Defendants' defenses against Smartmatic's claims.

The discovery sought from Negroponte is not cumulative or duplicative of information available elsewhere, for only Negroponte signed the declaration in the eTreppid Litigation. The discovery sought cannot be obtained from a more convenient, less burdensome, or less expensive source. Negroponte is the best witness to provide the information sought, because the information sought relates to his personal knowledge concerning Montgomery, knowledge that he attested to in the declaration previously filed with the *eTreppid* court.

A deposition of Negroponte would not impose an undue cost or burden. Defendants have not asked him to search for or produce any documents, but merely to provide testimony concerning what he knows. In these circumstances, deposition testimony without any associated document production is not unreasonably burdensome or expensive. This scope of discovery is justified proportionally by the importance of the information sought and the magnitude of the amount in controversy, which according to the Smartmatic Complaint exceeds $2 billion in damages. Parker Decl. Ex. A ¶ 365.

No privilege bars discovery of the information described above. Defendants do not intend to ask Negroponte to disclose any information protected by the attorney-client or work product privileges, but merely to testify concerning facts known to Negroponte concerning Montgomery.

Finally, the subpoena to Negroponte satisfies the *Touhy* regulations of his former employer, the Office of the Director of National Intelligence. It provides a written statement with a reasonably detailed description of the testimony sought. Parker Decl. Ex. H at Ex. A; 32 C.F.R. §§ 1703.3(b), 1703.4(d).

### C. The Government's Objections to the Negroponte Subpoena Are Without Merit.

The Department of Justice's response to the Negroponte Subpoena refused to permit Negroponte to be deposed. Parker Decl. ¶ 10 & Ex. J ("Negroponte Response"). The Negroponte Response cited five reasons for this decision. *Id*. None provide a basis to prevent the deposition of Negroponte.

**Time to Comply**. The Negroponte Response first asserted that the subpoena did not allow a sufficient time to comply. *Id*. at 2. Defendants are willing to identify an alternate date for the deposition that works for both Negroponte and for Smartmatic's counsel.

**Relevance and Proportionality.** The Negroponte Response next asserted that the information sought is not relevant or proportional to the needs of this case. *Id*. at 2. This argument rests on the assertion that the claims against Defendants are "16 years removed from the events at issue in *eTreppid*." *Id*. at 2. However, the information that Lindell relied upon concerning Montgomery is information *about what happened sixteen years ago*. Lindell relied on information about Montgomery actions at that time, and now seeks admissible evidence showing that the information he received was accurate. The deposition testimony Lindell seeks is relevant, without regard to how long ago the events in question occurred.

As noted above, the discovery sought by the Negroponte Subpoena is proportional to the needs of this case because only a single deposition is sought, and the stakes of the case are high. Smartmatic's Complaint alleges more than $2 billion in damages. Parker Decl. Ex. A ¶ 365.

**Apex Government Official.** The Negroponte Response next asserted that the subpoena to Negroponte does not meet the requirements for obtaining testimony from a high-ranking government official. Parker Decl. Ex. J at 3. The applicable standard for this principle is stated in *United States v. Newman*, 531 F. Supp. 3d 181 (D.D.C. 2021). "[H]igh ranking government officials are generally not subject to depositions unless they have some personal knowledge about the matter and the party seeking the deposition makes a showing that the information cannot be obtained elsewhere." *Id*. at 188. Both requirements are met here.

Negroponte's personal knowledge is established by the Negroponte Declaration, which states that Negroponte gave "personal consideration" to the facts of the eTreppid Litigation. Parker Decl. Ex. G ¶ 9 ("After careful and actual personal consideration of the matter . . ."). The Declaration also states that Negroponte's statements "are based on my personal knowledge" and that he "personally consider[ed]" the matter. *Id*. ¶ 2. The information sought by Defendants

9

cannot be obtained elsewhere because the Negroponte Declaration does not identify any other person who could testify concerning Negroponte's personal knowledge. Defendants are entitled to question Negroponte to establish in admissible form the facts concerning the government's assertion of the state secrets privilege with respect to Montgomery's work at eTreppid.

The Negroponte Response also cites a District of Maryland case about the undesirability of "Subjecting former officials['] decision-making processes to judicial scrutiny." *Id*. at 3. But Defendants here do not seek to scrutinize any decision-making process; they merely want to discover facts concerning Montgomery and his work.

**Privileged Information**.  The Negroponte Response next asserted that the subpoena seeks privileged information. *Id*. at 3. Defendants do not intend to inquire about any attorney-client privileged communications. Nor do they intend to inquire about any decision made or deliberative process. Rather, they intend to gather the available non-privileged facts surrounding Montgomery's work. Defendants expect that the government will assert any applicable state secret or national security privilege in the context of the deposition, to prevent discovery of that information. But the possibility that some information might be subject to a privilege is no basis to prevent discovery of the information that is not subject to a privilege.

**Cumulative and Burdensome.**  The Negroponte Response finally asserted that the Negroponte Subpoena is "Cumulative and Burdensome," because it is the "second one issued to DNI Negroponte and the sixth subpoena you have issued to government officials in your private civil actions concerning the 2020 election." *Id*. at 4.  This sentence is an apparent allusion to the fact that Defendants have also issued a subpoena to Negroponte in the *Dominion v. My Pillow, Inc.* action in this court, no. 1:21-cv-00445-CJN.

On July 26, 2023, counsel for Defendants proposed to counsel for Negroponte that the court proceedings for motions to compel compliance with the two subpoenas should be consolidated. Parker Decl. ¶ 11. Counsel for Negroponte declined this proposal. *Id*. Defendants would agree to a single deposition of Negroponte, to be used for both the *Smartmatic* and the *Dominion* lawsuits. The government's objections based on purported undue cumulativeness of subpoenas are without merit.

Further, the government's implication that Defendants are improperly burdening government officials in "your private civil actions" is misleading. Defendants did not initiate either the *Smartmatic* or the *Dominion* actions. Defendants moved to dismiss both actions, but their motions were denied, leading to the discovery process. It is the plaintiffs in those cases, not Defendants, that are the cause of Defendants' need for a deposition of Negroponte.

The D.C. Circuit has explained that "an agency's *Touhy* regulations do not relieve district courts of the responsibility to analyze privilege or undue burden assertions under Rule 45." *Watts*, 482 F.3d at 508. The purpose of *Touhy* regulations is "internal housekeeping and determining who within the agency must decide how to respond to a federal court subpoena." *Id.* at 508-509; *see id.* at 509 ("[T]hough an agency regulation may provide the method by which an agency head will comply with or oppose a subpoena, the legal basis for any opposition to the subpoena must derive from an independent source of law such as a governmental privilege or the rules of evidence or procedure.") (quoting 9 JAMES WM. MOORE ET AL., MOORE'S FEDERAL PRACTICE § 45.05[1][b] (3d ed. 2006)).

Under Rule 45, "The burden lies on the party resisting discovery to show that the documents requested are either unduly burdensome or privileged." *Buzzfeed, Inc.,* 318 F. Supp. 3d at 356 (D.D.C. 2018) (quoting *In re Micron Tech.*, 264 F.R.D. at 9) (internal quotations

11

removed). The testimony Defendants seek from Negroponte is proper. Nor is it unduly burdensome, for it does not seek information cumulative of testimony already obtained, and cannot be sought from a more convenient, less burdensome, or less expensive source. A single deposition, without any associated production of documents, is proportional to the needs of the Defendants to establish the facts concerning Montgomery, upon whom Lindell heavily relied in making the defamatory statements at issue. The burden of this important discovery is minimal compared with its benefit. Negroponte needs to provide a deposition.

### III. Conclusion

Defendants' subpoena to John Negroponte is appropriate and enforceable. The Court should order Mr. Negroponte promptly to provide the deposition testimony sought by Defendants in this case.

DATED:  August 4, 2023                    **PARKER DANIELS KIBORT LLC**

                                                                        By */s/ Andrew D. Parker*
                                                            Andrew D. Parker (D.C. Bar No. 63279)
                                                            888 Colwell Building
                                                            123 N. Third Street
                                                            Minneapolis, MN 55401
                                                            Telephone: (612) 355-4100
                                                            Facsimile: (612) 355-4101
                                                            parker@parkerdk.com

                                                     *Counsel for Defendant Michael Lindell*

By */s/ Andrew D. Parker*
Andrew D. Parker (D.C. Bar No. 63279)
Joseph A. Pull (D.C. Bar No. 982468)
888 Colwell Building
123 N. Third Street
Minneapolis, MN 55401
Telephone: (612) 355-4100
Facsimile: (612) 355-4101
parker@parkerdk.com
pull@parkerdk.com

*Counsel for Defendant My Pillow, Inc.*