# EXHIBIT H

AO 88A  (Rev. 12/20) Subpoena to Testify at a Deposition in a Civil Action

# UNITED STATES DISTRICT COURT

for the

_____ District of _____

|  |  |
|---|---|
| _____ | ) |
| *Plaintiff* | ) |
| v. | )     Civil Action No. |
| _____ | ) |
| *Defendant* | ) |
|  | ) |

## SUBPOENA TO TESTIFY AT A DEPOSITION IN A CIVIL ACTION

To: _____

*(Name of person to whom this subpoena is directed)*

❏ Testimony:  YOU ARE COMMANDED to appear at the time, date, and place set forth below to testify at a deposition to be taken in this civil action. If you are an organization, you must promptly confer in good faith with the party serving this subpoena about the following matters, or those set forth in an attachment, and you must designate one or more officers, directors, or managing agents, or designate other persons who consent to testify on your behalf about these matters:  **Please see documents attached as Exhibit A for the disclosure statement pursuant to** *Touhy v. Regan,* **340 U.S. 462 (1951), if applicable, see also Exhibits B-D attached**

| Place: | Veritext - 1250 I St NW #350, Washington, DC 20005 | Date and Time: **July 27, 2023 at 9:00 a.m. EST** |
|---|---|---|

The deposition will be recorded by this method: _____

❏ *Production:*  You, or your representatives, must also bring with you to the deposition the following documents, electronically stored information, or objects, and must permit inspection, copying, testing, or sampling of the material:

The following provisions of Fed. R. Civ. P. 45 are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and (g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date:  __July 13, 2023__

|  |  |
|---|---|
| *CLERK OF COURT* | OR |
|  | *s/ Andrew D. Parker* |
| _____ | _____ |
| *Signature of Clerk or Deputy Clerk* | *Attorney's signature* |

The name, address, e-mail address, and telephone number of the attorney representing *(name of party)* _____

_____ , who issues or requests this subpoena, are:

**Notice to the person who issues or requests this subpoena**

If this subpoena commands the production of documents, electronically stored information, or tangible things before trial, a notice and a copy of the subpoena must be served on each party in this case before it is served on the person to whom it is directed. Fed. R. Civ. P. 45(a)(4).

AO 88A  (Rev.  12/20) Subpoena to Testify at a Deposition in a Civil Action (Page 2)

Civil Action No.

## PROOF OF SERVICE
### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)*

I received this subpoena for *(name of individual and title, if any)* _____

on *(date)* _____ .

❒ I served the subpoena by delivering a copy to the named individual as follows: _____

_____ on *(date)* _____ ; or

❒ I returned the subpoena unexecuted because: _____

_____ .

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also
tendered to the witness the fees for one day's attendance, and the mileage allowed by law, in the amount of

$ _____ .

My fees are $ _____ for travel and $ _____ for services, for a total of $ _____ .

I declare under penalty of perjury that this information is true.

Date: _____

_____
*Server's signature*

_____
*Printed name and title*

_____
*Server's address*

Additional information regarding attempted service, etc.:

AO 88A  (Rev.  12/20) Subpoena to Testify at a Deposition in a Civil Action (Page 3)

## Federal Rule of Civil Procedure 45 (c), (d), (e), and (g) (Effective 12/1/13)

**(c) Place of Compliance.**

  **(1)** *For a Trial, Hearing, or Deposition.* A subpoena may command a person to attend a trial, hearing, or deposition only as follows:
   **(A)** within 100 miles of where the person resides, is employed, or regularly transacts business in person; or
   **(B)** within the state where the person resides, is employed, or regularly transacts business in person, if the person
    **(i)** is a party or a party's officer; or
    **(ii)** is commanded to attend a trial and would not incur substantial expense.

  **(2)** *For Other Discovery.* A subpoena may command:
   **(A)** production of documents, electronically stored information, or tangible things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and
   **(B)** inspection of premises at the premises to be inspected.

**(d) Protecting a Person Subject to a Subpoena; Enforcement.**

  **(1)** *Avoiding Undue Burden or Expense; Sanctions.* A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction—which may include lost earnings and reasonable attorney's fees—on a party or attorney who fails to comply.

  **(2)** *Command to Produce Materials or Permit Inspection.*
   **(A)** *Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.
   **(B)** *Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing, or sampling any or all of the materials or to inspecting the premises—or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:
    **(i)** At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.
    **(ii)** These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

  **(3)** *Quashing or Modifying a Subpoena.*

   **(A)** *When Required.* On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:

    **(i)** fails to allow a reasonable time to comply;
    **(ii)** requires a person to comply beyond the geographical limits specified in Rule 45(c);
    **(iii)** requires disclosure of privileged or other protected matter, if no exception or waiver applies; or
    **(iv)** subjects a person to undue burden.
   **(B)** *When Permitted.* To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:

    **(i)** disclosing a trade secret or other confidential research, development, or commercial information; or
    **(ii)** disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.
   **(C)** *Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:
    **(i)** shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and
    **(ii)** ensures that the subpoenaed person will be reasonably compensated.

**(e) Duties in Responding to a Subpoena.**

  **(1)** *Producing Documents or Electronically Stored Information.* These procedures apply to producing documents or electronically stored information:
   **(A)** *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.
   **(B)** *Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.
   **(C)** *Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.
   **(D)** *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

  **(2)** *Claiming Privilege or Protection.*
   **(A)** *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:
    **(i)** expressly make the claim; and
    **(ii)** describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.
   **(B)** *Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

**(g) Contempt.**
The court for the district where compliance is required—and also, after a motion is transferred, the issuing court—may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

For access to subpoena materials, see Fed. R. Civ. P. 45(a) Committee Note (2013).

# **Exhibit A**

### *Touhy* Summary of Information Sought and Relevance to Proceeding

To the extent that the *Touhy* regulations of the Office of the Director of National Intelligence apply to the attached subpoena, the importance, and the relevance of the information the issuing party intends to seek through the deposition of John Negroponte is as follows:

The testimony sought from Mr. Negroponte is of major importance to the defenses of Michael J. Lindell and My Pillow, Inc. in the captioned proceeding *Smartmatic USA Corp. et al. v. Michael J. Lindell, et al.*, no. 21-cv-0098-WMW-JFD in the U.S. District Court for the District of Minnesota. Plaintiffs' claims in that action allege that Mr. Lindell made false statements about the 2020 election. One of Mr. Lindell's defenses is that his statements were based in significant part upon information he received from and about a former government contractor named Dennis Montgomery, including information about technology developed by Mr. Montgomery, and provided to the Central Intelligence Agency to hack and penetrate electronic election systems. Mr. Lindell's and My Pillow, Inc.'s defenses include the defense that the allegedly defamatory statements were true, and the defense that the statements were plausible. Mr. Negroponte's testimony is anticipated to support these defenses by showing one or more of the following: (1) the technology described by Mr. Montgomery exists; (2) the technology has been tested and works; (3) the technology existed prior to 2020; (4) the technology eventually was possessed by individuals outside the CIA; (5) the technology was used to manipulate elections outside the United States prior to 2020.  Mr. Negroponte's testimony would further support Mr. Lindell's and My Pillow, Inc.'s defenses by showing that Mr. Montgomery's account of his past activities is true, that Mr. Montgomery performed work for the United States government, and that Mr. Montgomery's work was relied upon and used by the United States Government.

1

There is good reason to conclude that Mr. Negroponte knows the information sought by Mr. Lindell and My Pillow, Inc. Beginning in 2006, Mr. Montgomery became involved in litigation against his former employer and business partner, in case no. 06-cv-00056 in the United States District Court for the District of Nevada (the "eTreppid Litigation"). ETreppid was a technology company that developed computer software and contracted with the Central Intelligence Agency.[1] Mr. Montgomery had been a software developer at eTreppid. The United States Department of Defense intervened in the eTreppid Litigation and asked the Nevada court to enter a protective order to prevent disclosure of certain information. In support of the Department of Defense's motion, Mr. Negroponte signed and submitted a "Declaration and Formal Claim of State Secrets and Statutory Privileges by John D. Negroponte, Director of National Intelligence,"[2] which was filed in the eTreppid Litigation on September 25, 2006. A copy of the Negroponte Declaration is attached as **Exhibit B**. The stated purpose of the Negroponte Declaration was to "assert formally" as the Director of National Intelligence and "head of the United States Intelligence Community, the state secrets privilege to protect intelligence information" and to "protect intelligence sources and methods from unauthorized disclosure." *Id*. ¶ 3. The Negroponte Declaration stated that it was accompanied by a "classified *ex parte*, *in camera* declaration," *id.* ¶ 8, and that "the unauthorized disclosure of certain information that may be implicated by the parties' claims in this matter, as set forth in more detail in the classified *ex parte*, *in camera* declaration which accompanies this declaration, reasonably could be expected to cause serious, and in some cases exceptionally grave damage to the national security of the United States," *id*. ¶ 9. The Negroponte Declaration asked the Court

---

[1] A copy of an illustrative agreement between eTreppid and the CIA is attached as **Exhibit C**.
[2] Mr. Negroponte served as the Director of National Intelligence from 2005-2007.

to "prevent any party from testifying, eliciting testimony, producing, disclosing, entering into evidence or making any other use in discovery, at trial, or in any other way in connection with this case, information concerning: (a) the existence or non-existence of, any actual or proposed relationship, agreement, connection, contract, transaction, communication, or meeting of any kind between any entity in the United States Intelligence Community, or any current or former official·, employee, or representative thereof, and any individuals or entities associated with this lawsuit, on any current or former officer or employee thereof; and (b) any actual or proposed interest in, application, or use by any entity in the United States Intelligence Agency, or any current or former official, employee, or representative thereof, of any technology, software, or source code owned or claimed by any individuals or entities associated with this lawsuit."

From this sequence of events, it is reasonable to conclude that Mr. Negroponte possesses knowledge about Mr. Montgomery's activities at eTreppid performed in connection with the CIA. Lindell and My Pillow, Inc. have a right to gather the evidence of Mr. Negroponte's knowledge concerning Mr. Montgomery's activities to support their defenses concerning Mr. Lindell's reliance on Mr. Montgomery, and to defend against any attacks the plaintiffs may assert against Mr. Montgomery's credibility.

The disclosure of Mr. Negroponte's testimony is appropriate as part of the discovery in the *Smartmatic USA Corp. et al. v. Michael J. Lindell, et al.* action, which is open and ongoing. It is not privileged; it is relevant to the defendants' defenses and therefore discoverable under the Federal Rules of Civil Procedure. To Defendants' knowledge, no statute, regulation, executive order, or other provision of law would be violated by disclosure of it, defendants do not know of any non-disclosure agreement that would prohibit it, and it would not require disclosure of intelligence sources or methods, classified information or state secrets, violate any ODNI policy,

or interfere with the conduct of ODNI functions.  To the extent Mr. Negroponte's testimony is deemed sensitive or confidential, the testimony could be designated as confidential under the protective order entered by the Court in the action.[3] Mr. Lindell and My Pillow, Inc. believe that Mr. Negroponte's testimony concerning Mr. Montgomery can be taken without creating any issue of state secrets, because the testimony concerns events from long ago and because the testimony can be given in a general way as to avoid any lingering concerns over classified information.

Mr. Lindell and My Pillow, Inc. anticipate Mr. Negroponte's testimony would be (1) Mr. Montgomery participated in the development of software technology that can be used to penetrate electronic election equipment and manipulate vote totals; (2) this technology was tested and found to work; (3) the technology was developed and was operational prior to 2020; (4) the technology at some point passed into the possession of individuals outside the CIA; (5) the technology was used to manipulate elections outside the United States prior to 2020.

---

[3] **Exhibit D**, Protective Order entered November 3, 2022, governing both party and non-party discovery in *Smartmatic USA Corp. et al. v. Michael J. Lindell, et al.*, 21-cv-0098-WMW-JFD, entered November 3, 2022.

# EXHIBIT B

UNITED STATES' MOTION FOR
PROTECTIVE ORDER


EXHIBIT 1

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEVADA

|  |  |
|---|---|
| ETREPPID TECHNOLOGIES, LLC, a California Corporation, | ) ) ) |
| Plaintiff | ) ) |
| v. | ) ) |
| DENNIS MONTGOMERY, et. al., | ) ) |
| Defendants. | ) ) ) |

CV-N-06-00415(BES)(VPC)

|  |  |
|---|---|
| DENNIS MONTGOMERY, et. al., | ) ) |
| Plaintiffs | ) ) |
| v. | ) ) |
| ETREPPID TECHNOLOGIES, INC., et. al. | ) ) ) |
| Defendants. | ) ) |

CV-N-06-00056(BES)(VPC)

## DECLARATION AND FORMAL CLAIM OF
## STATE SECRETS AND STATUTORY PRIVILEGES
## BY JOHN D. NEGROPONTE,
## DIRECTOR OF NATIONAL INTELLIGENCE

I, JOHN D. NEGROPONTE, hereby declare as follows:

1.  I am the Director of National Intelligence (DNI) of the United States. I have held this position since April 21, 2005. From June 28, 2004, until my appointment as DNI, I served as the United States Ambassador to Iraq.

From September 18, 2001, until my appointment in Iraq, I served as the United States Permanent Representative to the United Nations. I have also served as Ambassador to Honduras (1981-1985), Mexico (1989-1993), and the Philippines (1993-1996), and as Deputy Assistant to the President for National Security Affairs (1987-1989).

2. The statements made herein are based on my personal knowledge, as well as on information provided to me in my official capacity as DNI, and on my personal evaluation of that information. In personally considering this matter, I have read the information contained in the separate classified declaration filed *in camera* and *ex parte* in this case.

3. The purpose of this declaration is to assert formally, in my capacity as DNI and head of the United States Intelligence Community, the state secrets privilege to protect intelligence information ("state secrets privilege"), as well as a statutory privilege under the National Security Act, 50 U.S.C. § 403-1(i)(1), to protect intelligence sources and methods from unauthorized disclosure. Unauthorized disclosure of information covered by the state secrets and statutory privileges reasonably could be expected to cause serious, and in some cases exceptionally grave damage to the national security of the

2

United States, and such information should therefore be excluded from any use in this litigation.

## I. STATUTORY AND EXECUTIVE ORDER AUTHORITIES

4. The position of Director of National Intelligence was created by the Intelligence Reform and Terrorism Prevention Act of 2004, Pub. L. No. 108-458, §§ 1011(a), 1097, 118 Stat. 3638, 3643-63, 3698-99 (2004) (amending sections 102 through 104 of Title I of the National Security Act of 1947). Subject to the authority, direction, and control of the President of the United States, the DNI serves as the head of the United States Intelligence Community and as the principal advisor to the President, the National Security Council, and the Homeland Security Council for matters related to intelligence and national security. *See*, 50 U.S.C. § 403 (b)(1),(2).

5. The "United States Intelligence Community" includes the Office of the Director of National Intelligence; the Central Intelligence Agency; the National Security Agency; the Defense Intelligence Agency; the National Geospatial-Intelligence Agency; the National Reconnaissance Office; other offices within the Department of Defense for the collection of specialized national intelligence through reconnaissance programs; the intelligence elements of the military services, the Federal

3

Bureau of Investigation, and the Department of Energy; the
Office of Intelligence and Analysis of the Department of
the Treasury; the Drug Enforcement Administration's
Intelligence Division; the Bureau of Intelligence and
Research of the Department of State; elements of the
Department of Homeland Security concerned with the analysis
of intelligence information (including the Office of
Intelligence of the Coast Guard); and such other elements
of any other department or agency as the President may
designate, or as may be jointly designated by the DNI and
the head of the department or agency concerned, as an
element of the United States Intelligence Community. *See*,
50 U.S.C. § 401(a)(4).

　　6.　The responsibilities and authorities of the DNI,
enumerated in the National Security Act, as amended, at 50
U.S.C. § 403-1, include ensuring that national intelligence
is provided to the President, the heads of the departments
and agencies of the Executive Branch, the Chairman of the
Joint Chiefs of Staff and senior military commanders, and
the Senate and House of Representatives and committees
thereof.　50 U.S.C. § 403-1(a)(1).　The DNI is also charged
with establishing the objectives of, determining the
requirements and priorities for, and managing and directing
the tasking, collection, analysis, production, and

dissemination of national intelligence by elements of the United States Intelligence Community. 50 U.S.C. § 403-1(f)(1)(A)(i), (ii). The DNI is responsible for developing and determining, based on proposals submitted by heads of agencies and departments within the United States Intelligence Community, an annual consolidated budget for the National Intelligence Program for presentation to the President, and for ensuring the effective execution of the annual budget for intelligence and intelligence-related activities, including managing and allotting appropriations for the National Intelligence Program. *Id.* § 403-1(c)(1)-(5).

7. In addition, the National Security Act of 1947, as amended, provides that "The Director of National Intelligence shall protect intelligence sources and methods from unauthorized disclosure." 50 U.S.C. § 403-1(i)(1). Consistent with this responsibility, the DNI establishes and implements the guidelines of the United States Intelligence Community for the classification of information under applicable law, Executive Orders, or other Presidential directives, and access and dissemination of intelligence. *Id.* § 403-1(i)(2)(A), (b). In particular, the DNI is responsible for the establishment of uniform standards and procedures for granting access to Sensitive

Compartmented Information to any officer or employee of any agency or department of the United States and for ensuring consistent implementation of those standards throughout such departments and agencies. *Id.* § 403-1(j)(1),(2).

8. By virtue of my position as the DNI, and unless otherwise directed by the President, I have access to all intelligence related to national security that is collected by any department, agency, or other entity of the United States. Pursuant to Executive Order 12958, as amended,[1] the President has authorized me to exercise original TOP SECRET classification authority. After personal consideration of the matter, I have determined that the classified *ex parte*, *in camera* declaration which accompanies this assertion of the state secrets privilege and the statutory privilege to protect intelligence sources and methods is properly classified under § 1.3 of E.O. 12958, because the unauthorized public disclosure of information contained in that declaration reasonably could be expected to cause serious, and in some cases exceptionally grave damage to the foreign policy and national security of the United States.

---

[1] Executive Order 12958 was amended by Executive Order 13292. *See* Exec. Order No. 13292, 68 Fed. Reg. 15315 (Mar. 28, 2003). All citations to Exec. Order No. 12958 are to the Order as amended by Exec. Order No. 13292. *See* Exec. Order No. 12,958, 60 Fed. Reg. 19825 (1995), *reprinted as amended in* 50 U.S.C.A. § 435 note at 180 (West Supp. 2006).

## II. ASSERTION OF THE STATE SECRETS AND STATUTORY PRIVILEGES

9. After careful and actual personal consideration of the matter, I have determined that the unauthorized disclosure of certain information that may be implicated by the parties' claims in this matter, as set forth here and described in more detail in the classified *ex parte, in camera* declaration which accompanies this declaration, reasonably could be expected to cause serious, and in some cases exceptionally grave damage to the national security of the United States, and thus must be protected from disclosure and excluded from this case. Therefore, I formally invoke and assert the state secrets privilege to prevent the disclosure of that information.

10. Through this declaration, I also invoke and assert a statutory privilege held by the DNI under the National Security Act, as amended, to protect the intelligence sources and methods implicated by this case. *See,* 50 U.S.C. § 403-1(i)(1). My assertion of this statutory privilege for intelligence sources and methods is coextensive with my state secrets privilege assertion.

11. With my assertion of the state secrets privilege and the statutory privilege to protect intelligence sources and methods, I respectfully ask the Court to prevent any

party from testifying, eliciting testimony, producing, disclosing, entering into evidence or making any other use in discovery, at trial, or in any other way in connection with this case, information concerning: (a) the existence or non-existence of, any actual or proposed relationship, agreement, connection, contract, transaction, communication, or meeting of any kind between any entity in the United States Intelligence Community, or any current or former official, employee, or representative thereof, and any individuals or entities associated with this lawsuit, on any current or former officer or employee thereof; and (b) any actual or proposed interest in, application, or use by any entity in the United States Intelligence Agency, or any current or former official, employee, or representative thereof, of any technology, software, or source code owned or claimed by any individuals or entities associated with this lawsuit.

12.   I have determined that any unauthorized disclosure of the information described in Paragraph 11 reasonably could be expected to cause serious, and in some case exceptionally grave damage to national security since the United States can neither confirm nor deny such information without compromising the effectiveness of intelligence sources and methods.  Public disclosure of

information that confirms the use of particular intelligence sources and methods compromises the effectiveness of those sources and methods by alerting likely targets to their use, while public denial of the use of particular intelligence sources and methods reveals to adversaries that some practices are secure. Any truthful response to confirm or deny allegations related to intelligence sources or methods informs hostile foreign intelligence agencies about the manner in which the United States collects intelligence information, and could result in a loss of valuable intelligence when our adversaries are able to take countermeasures. Similarly, if the United States government was required to admit or deny allegations made in litigation concerning its classified contracting process, then classified contract relationships could be exposed, which would cause harm to the national security. The precise nature of the harm that would ensue from the disclosure of the information protected by the state secrets privilege and statutory privilege to protect intelligence sources and methods is set forth in detail in the *in camera, ex parte* declaration.

## CONCLUSION

13.    I respectfully request that the Court grant the Department of Defense's motion for a protective order.

I hereby declare under penalty of perjury that the foregoing is true and correct.

Executed this _19th_ day of September 2006.

JOHN D. NEGROPONTE
DIRECTOR OF NATIONAL INTELLIGENCE

# EXHIBIT  C



**eTreppid Technologies, LLC**

755 Trademark Drive
Reno, NV 89521

www.eTreppid.com

Tel: (775) 337-6771
Fax: (775) 337-1877

January 12, 2004

To whom it may concern,

For about four months eTreppid Technologies, LLC (the "Company") has been providing assistance and information (including that related to the Company's technology, know-how, business and processes) pursuant to an agreement with the CIA (the "Government"). As part of the consideration for providing such assistance and information, the Government agreed that eTreppid Technologies' identity as a contractor and source of the assistance and information as well as the information supplied by the Company would be kept confidential, would only be disclosed to individuals within the government on a need to know basis only, and would not be revealed to the public under the Freedom of Information Act or otherwise. The purpose of this letter agreement is to confirm in writing the understanding between the parties.

It is our current intent to continue to work with the Government with regard to this matter. This will confirm that the U.S. Government agrees not to make any attempt to unilaterally use or otherwise take technology, intellectual property or other property or assets owned by eTreppid Technologies. In addition, the Government agrees that it will negotiate in good faith an agreement that sets forth future services (including technology and intellectual property) to be provided by the Company and the compensation to be paid for such future services as well as services already rendered.

eTreppid Technologies, LLC

By:  Warren Trepp, CEO

US Government

By:

**Edward B. Charbonneau**
Associate DDS&T for Technical Operations

Central Intelligence Agency
Washington, DC 20505

(703) 482-4848
Fax: (703) 482-6350

*"bringing digital to life"*

# EXHIBIT  D

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MINNESOTA

SMARTMATIC USA CORP., SMARTMATIC
INTERNATIONAL HOLDING B.V. and SGO
CORPORATION LIMITED,

               Plaintiffs,

               Case No. 22-cv-00098- WMW-JFD

    v.

MICHAEL J. LINDELL and MY PILLOW, INC.,

               Defendants.

## PROTECTIVE ORDER GOVERNING THE PRODUCTION AND EXCHANGE OF CONFIDENTIAL INFORMATION

The Court enters the following Protective Order in this case,

Plaintiffs Smartmatic USA Corp., Smartmatic International Holding B.V., and SGO Corporation Limited (collectively, "Smartmatic") and Defendants Michael J. Lindell and My Pillow, Inc., (collectively, "Defendants"; Smartmatic and Defendants are collectively the "Parties") are engaged in discovery proceedings, which include, among other things, taking depositions, answering interrogatories, and producing documents. The Parties believe that certain information they have produced or will produce may contain information that is proprietary, commercially sensitive, or non-public. Under Federal Rules of Civil Procedure 5.2 and 26(c), this Order Governing the Production and Exchange of Confidential Information (the "Order") will govern the handling of documents, testimony (in any form whether by affidavit, declaration, or deposition), exhibits, transcripts, written discovery requests, interrogatory responses, responses to requests for admission, and responses to requests for documents, and any other information or

1

material produced, given, or exchanged, including any information contained therein or derived therefrom ("Discovery Material"), by or among any Party or non-Party providing Discovery Material (each a "Producing Party") in the above-captioned action (the "Litigation") to the party receiving the Discovery Material ("Receiving Party").

1.      Any Producing Party may designate any Discovery Material as "Confidential Discovery Material" under the terms of this Order where such Party in good faith believes that such Discovery Material contains trade secrets, proprietary business information, competitively sensitive information or other information the disclosure of which would, in the good faith judgment of the Party or, as appropriate, non-party designating the material as confidential, be detrimental to the conduct of that Party's or non-party's business or the business of any of that Party's or non-party's customers or clients.

2.      Any Producing Party may designate any Discovery Material as "Attorneys' Eyes Only Discovery Material" under the terms of this Order where such Party in good faith believes that such Discovery Material contains Attorneys' Eyes Only Discovery Material.  Attorneys' Eyes Only Discovery Material is defined as Confidential Discovery Material containing information such that disclosure other than as provided in this Order could reasonably be expected to cause irreparable harm to the Producing Party. To the extent source code is discoverable, the Parties will meet and confer regarding terms and entry of a separate protective order for the source code before any is permitted to be inspected.

3.      Any Confidential Discovery Material and Attorneys' Eyes Only Discovery Material produced in the Litigation will be used, except by the Producing Party, solely for purposes of this Litigation and no Receiving Party will provide Discovery Material to any person or entity (including for any other litigation) or make any Discovery Material public except as permitted in

2

this Litigation. Notwithstanding the limitations in the preceding sentence, any Party may use Discovery Material lawfully obtained independently of this Litigation for any purpose consistent with any other limitations placed on that Discovery Material.

4.      Notwithstanding any other provision of this Order, no Receiving Party may provide Discovery Material designated as Confidential Material or Attorneys' Eyes Only Material to any person or entity involved in the Litigation unless and until that person or entity confirms their understanding of, and agreement to, abide by the terms of this Order.

5.      The designation of Discovery Material as Confidential Discovery Material or Attorneys' Eyes Only Discovery Material will be made in the following manner:

> a.      In the case of documents or other written materials (including affidavits and declarations but not pre-trial deposition or other pre-trial testimony: (i) by affixing the legend "Confidential" or "Attorneys' Eyes Only" to each page containing any Confidential or Attorneys' Eyes Only Discovery Material; or (ii) in the case of electronically stored information produced in native format by affixing the legend "Confidential" or "Attorneys' Eyes Only" to the media containing the Discovery Material (e.g., CD, DVD, thumb drive, external hard drive, or secure file transfer).

> b.      In the case of testimony: (i) by a statement on the record, by counsel, at the time of such disclosure or, in the case of a deposition or other pre-trial oral testimony, before the conclusion of the deposition or pre-trial testimony; or (ii) by written notice, sent to all Parties within 15 business days of receipt of the final deposition transcript or other pre-trial testimony; provided that only those portions of the transcript designated as Confidential or

Attorneys' Eyes Only Discovery Material will be deemed Confidential or Attorneys' Eyes Only Discovery Material. Each deposition will be deemed to be Attorneys' Eyes Only Discovery Material until 15 business days after counsel receive a copy of the final transcript, after which the deposition will be treated in accordance with its confidentiality designation, if any. The Parties may modify this procedure for any particular deposition, through agreement in writing before, or on the record at, such deposition, without further order of the Court.

c. In the case of any other Discovery Material, by written notice that the Discovery Material constitutes Confidential or Attorneys' Eyes Only Discovery Material.

6. The designation of Discovery Material as Confidential or Attorneys' Eyes Only Discovery Material will constitute a representation that such Discovery Material has been reviewed by an attorney representing the Party making the designation and that there is a good faith basis for such designation.

7. Inadvertent failure to designate Discovery Material as Confidential or Attorneys' Eyes Only Discovery Material does not constitute a waiver of such claim and may be corrected. A Producing Party may designate as Confidential or Attorneys' Eyes Only any Discovery Material that has already been produced, including Discovery Material that the Producing Party inadvertently failed to designate as Confidential or Attorneys' Eyes Only, (i) by notifying in writing the Receiving Party to whom the production has been made that the Discovery Material constitutes Confidential or Attorneys' Eyes Only Discovery Material, and (ii) providing a replacement copy of the Discovery Material marked in a manner consistent with Paragraph 5.

After receiving such notice, the Parties will treat the Discovery Material so designated as Confidential or Attorneys' Eyes Only Discovery Material, and such Discovery Material will be fully subject to this Order from the date of such supplemental notice forward. The Party receiving such notice will make a reasonable, good -faith effort to ensure that any analyses, memoranda, notes, or other such materials generated that include or are based upon such newly designated information are immediately treated as Confidential or Attorneys' Eyes Only Discovery Material. In addition, after receiving such notice, any receiving Party that disclosed the Discovery Material before its designation as "Confidential" or "Attorneys' Eyes Only" will exercise its best efforts to ensure (i) the return or destruction of such Discovery Material, if it was disclosed to anyone not authorized to receive it under this Order, (ii) that any documents or other materials derived from such Discovery Material are treated as if the Discovery Material had been designated as "Confidential" or "Attorneys' Eyes Only" when originally produced, (iii) that such Discovery Material is not further disclosed except in accordance with the terms of this Order, and (iv) that any such Discovery Material, and any information derived therefrom, is used solely in accordance with this Order.

8.  Confidential Discovery Material may be disclosed, summarized, described, characterized, or otherwise communicated, orally or in writing, or made available in whole or in part only to the following persons for use in connection with the Litigation and in accordance with this Order:

a.  The Parties' current employees who are assisting with or making decisions concerning this Litigation, to the extent deemed reasonably necessary by counsel of record for the purpose of assisting in the prosecution or defense of the Litigation;

b.      Counsel for the Parties in the Litigation (including in-house counsel), and the partners, associates, paralegals, secretaries, clerical, regular and temporary employees, and service vendors of such counsel (including outside copying and litigation support services) who are assisting with the Litigation;

c.      Experts, consultants, or independent litigation support services assisting counsel for the Parties, and partners, associates, paralegals, secretaries, clerical, regular and temporary employees, and service vendors of such experts or consultants (including outside copying services and outside support services) who are assisting with the Litigation;

d.      Persons who appear as an author or recipient on the face of the document to be disclosed;

e.      Witnesses or deponents, and their counsel, but only to the extent necessary to conduct or prepare for depositions or testimony in the Litigation, and only if furnished, shown, or disclosed in accordance with this Order;

f.      The Court, persons employed by the Court, translators, videographers, and court reporters who are recording and transcribing any hearing, trial, or deposition in the Litigation or any appeal therefrom;

g.      A videographer, translator, court reporter, or transcriber who reports, tapes, translates, or transcribes testimony in this Litigation at a deposition and agrees by a statement on the record, before recording or transcribing any such testimony constituting Confidential Discovery Materials, that all such testimony and information revealed at the deposition is and will remain

confidential and will not be disclosed by such translator, videographer, reporter, or transcriber except to the attorneys for each Party and any other person who is present while such testimony is being given, and that copies of any transcript, reporter's notes or any other transcription records of any such testimony will be retained in confidentiality and safekeeping by such videographer, translator, reporter, or transcriber or will be delivered to the undersigned attorneys;

h.   Jury consultants and mock jurors, if any, provided each such person executes the form attached as Exhibit A; or

i.   Any other person only upon (i) order of the Court entered upon notice to the Parties, or (ii) written stipulation or statement on the record of agreement by the Producing Party who provided the Discovery Material being disclosed, provided that such person signs an undertaking in the form attached as Exhibit A hereto;

9.   Except with the prior written consent of the Producing Party or by Order of the Court, Attorneys' Eyes Only Discovery Material shall not be furnished, shown, or disclosed to any person or entity except to those identified in Paragraph 8(b)–8(i).

10.   Confidential or Attorneys' Eyes Only Discovery Material may be provided to persons listed in Paragraph 8(c) only to the extent necessary for such expert or consultant to prepare a written opinion, to prepare to testify, or to assist counsel in the Litigation, provided that such expert or consultant (i) is not a current or former employee of Smartmatic or Defendants subject to a non-disclosure agreement, (ii) is not a current competitor of Smartmatic or Defendants, an employee of a current competitor of Smartmatic or Defendants, or advising or discussing

employment with, or a consultant to, a current competitor of Smartmatic or Defendants, (iii) agrees to use, and does use, the Discovery Material solely in connection with the Litigation and (iv) agrees to be bound by the terms of this Order by signing an undertaking in the form attached as Exhibit A hereto.  Counsel for the Party showing, providing, or disclosing Confidential or Attorneys' Eyes Only Discovery Material to any person required to execute an undertaking under this Paragraph will be responsible for obtaining such signed undertaking and retaining the original, executed copy thereof.  "Competitors" are persons or entities endeavoring to engage in the same or similar lines of business, who provide the same or similar services, who sell the same or similar products, or who operate in the same markets, as well as any persons who are engaged in any of these activities.

11.     Should the need arise for any Party or non-party to disclose Confidential or Attorney's Eyes Only Discovery Material during any hearing or trial before the Court, including through argument or the presentation of evidence, such Party or non-party may do so only after taking such steps as the Court, upon motion of the Producing Party, deems necessary to preserve the confidentiality of such Confidential or Attorneys' Eyes Only Discovery Material.

12.     This Order shall not preclude counsel for any Party from using during any deposition in this action any Documents or Testimony which has been designated as Confidential or Attorneys' Eyes Only Discovery Material under the terms hereof.  Any deposition witness who is given access to Confidential or Attorney's Eyes Only Discovery Material shall, prior thereto, be provided with a copy of this Order and shall execute a written agreement, in the form of Exhibit A attached hereto, to comply with and be bound by its terms. Counsel for the Party obtaining the certificate shall supply a copy to counsel for the other Parties and, as appropriate, a non-party that is a Producing Party.  If, after being presented with a copy of this Order, a witness refuses to be

bound by this Order, the Court shall, upon application, enter an order directing the witness's compliance with the Order.

13.     Every person to whom Confidential or Attorneys' Eyes Only Discovery Material is disclosed, summarized, described, characterized, or otherwise communicated or made available, orally or in writing, in whole or in part, will be advised that the information is being disclosed subject to the terms of this Order and may not be disclosed or used for purposes other than those permitted hereunder. Each such person will maintain the Confidential or Attorneys' Eyes Only Discovery Material, or information derived therefrom, in a manner reasonably calculated to prevent unauthorized disclosure. Any Party issuing a subpoena to a non-Party will enclose a copy of this Order and notify the non-Party that the protections of this Order will apply to Discovery Materials of such non-Party.

14.     Any pleading, brief, memorandum, motion, letter, affidavit, declaration, or other document filed with the Court that discloses, summarizes, describes, characterizes, or otherwise communicates Confidential or Attorneys' Eyes Only Discovery Materials (a "Confidential Filing") must be filed with the Court under seal in accordance with Local Rule 5.6.

15.     If a Party objects to the designation of Discovery Material as Confidential or Attorneys' Eyes Only Discovery Material, that Party ("the Objecting Party") will send written notice to the Designating Party that includes a date and time for a meet and confer to discuss the disputed designation.  The Objecting Party and the Designating Party will thereafter meet and confer either at the suggested date and time or, to the extent the Designating Party is unavailable at the suggested date and time, at some other agreed date and time.  If the meet and confer procedure does not resolve the dispute, the Objecting Party may, within seven (7) days of the meet and confer, file a motion with the Court to strike the designation.  The Producing Party may, within

fourteen (14) days, file a response, and the Objecting Party may file a reply within seven (7) days, after which the matter will be fully briefed and ripe for the Court to resolve the dispute. A hearing may be held at the discretion of the Court. While such an application is pending, the Discovery Material or testimony in question will be treated as Confidential or Attorneys' Eyes Only Discovery Material pursuant to this Order. The burden of establishing that any Discovery Material was properly designated as Confidential or Attorneys' Eyes Only Discovery Material is on the Designating Party. If an Objecting Party seeking to challenge any designation of Discovery Material or testimony as Confidential or Attorneys' Eyes Only fails to object and propose a meet and confer as described in this paragraph, then the Objecting Party will be deemed to have permanently waived its right to challenge the designation of the disputed Discovery Material as Confidential or Attorneys' Eyes Only.

16. The Parties have the right to apply under Federal Rules of Civil Procedure 5.2(e) and 26 for an order seeking additional safeguards with respect to the use and handling of Discovery Material or to modify the terms of this Order.

17. Entering into this Order, or agreeing to or producing or receiving Discovery Material or otherwise complying with the terms of this Order, will not:

    a.    prejudice in any way the rights of any Party to (i) seek production of any documents or information in discovery, or (ii) object to the production of any documents or information on the ground that it is not subject to discovery;

    b.    operate as an admission by any Party that any particular Discovery Material constitutes Confidential or Attorneys' Eyes Only Discovery Material or

contains or reflects trade secrets or any other type of confidential information;

c.    prejudice in any way the rights of any Party to (i) petition the Court for a further protective order relating to any purportedly Confidential or Attorneys' Eyes Only Discovery Material, or (ii) seek a determination by the Court whether any Discovery Material or Confidential or Attorneys' Eyes Only Discovery Material should be subject to the terms of this Order;

d.    prevent any Producing Party from agreeing in writing to alter or waive the provisions or protections provided herein with respect to their designation of any particular Discovery Material;

e.    prejudice in any way the rights of any Party to object to the relevance, authenticity, use, or admissibility into evidence of any document, testimony, or other evidence subject to this Order;

f.    preclude any Party from objecting to discovery that it believes to be otherwise improper; or

g.    operate as a waiver of any attorney-client, work product, business strategy, trade secret or other privilege.

18.    This Order has no effect upon, and will not apply to, a Producing Party's use or disclosure of its own Discovery Material for any purpose. Nothing herein will prevent a Producing Party from disclosing its own Discovery Material.

19.    If Discovery Material that is subject to a claim of attorney-client privilege, attorney work product, or any other applicable privilege or ground on which production of that information should not be made to any Party ("Inadvertent Production Material") is inadvertently produced by

a Producing Party or Parties, such inadvertent production will in no way prejudice or otherwise constitute a waiver of, or estoppel as to, any claim of attorney-client privilege, work product, or other applicable privilege.

    a.    A claim of inadvertent production will constitute a representation by the Party claiming inadvertent production that the Inadvertent Production Material has been reviewed by an attorney for the Party claiming inadvertent production and that there is a good faith basis for the claim of inadvertent production.

    b.    If a claim of inadvertent production is made under this Order, with respect to Discovery Material then in the custody of another Party, the Party possessing the Inadvertent Production Material will: (i) refrain from any further examination or disclosure of the claimed Inadvertent Production Material; and (ii) if requested, promptly make a good faith effort to destroy all such claimed Inadvertent Production Material (including summaries and excerpts) and all copies thereof, and certify in writing to that fact. Once a claim of inadvertent production is made, no Party may use the Inadvertent Production Material for any purpose until further order of the Court.

    c.    The Party claiming inadvertent production and a Receiving Party will follow the same procedure set forth in this order for challenging the designation of Inadvertent Production Material; while any motion relating to the Inadvertent Production Material is pending, the Inadvertent Production Material in question will be treated in accordance with Paragraph 7. A Receiving Party may not assert as a ground for challenging

privilege the fact of the inadvertent production, nor may it include or otherwise disclose in any filing relating to the challenge, as an attachment, exhibit, or otherwise, the Inadvertent Production Material (or any portion thereof).

20.     Nothing herein will be deemed to waive any applicable common law or statutory privilege or work product protection.

21.     In the event additional Parties join or are joined in the Litigation, they will not have access to Confidential or Attorneys' Eyes Only Discovery Material until the newly joined Party by its counsel has executed this Order and filed with the Court its agreement to be fully bound by it.

22.     Subject to the requirements of Federal Rules of Civil Procedure 5.2(e) and 26, the provisions of this Order will, absent written permission of the Designating Party or further order of the Court, continue to be binding throughout and after the conclusion of the Litigation, including, without limitation, any appeals therefrom, except as provided in Paragraph 24.

23.     In the event that any Confidential or Attorneys' Eyes Only Discovery Material is used in open court during any court proceeding or filed, marked, or offered as a trial exhibit, the material will lose its confidential status and become part of the public record, unless the Designating Party applies for and obtains an order from this Court specifically maintaining the confidential status of particular material. Before any court proceeding in which Confidential or Attorneys' Eyes Only Discovery Material is to be used, counsel will confer in good faith on such procedures that may be necessary or advisable to protect the confidentiality of any such Discovery Material.

24.     Within 60 days after receiving notice of the entry of an order, judgment, or decree finally disposing of the Litigation, or any other proceeding in which Confidential or Attorneys' Eyes Only Discovery Material is permitted to be used, including the exhaustion of all possible appeals, and upon the written request of the Designating or Producing Party, all persons having received Confidential or Attorneys' Eyes Only Discovery Material will either (i) make a good faith and reasonable effort to return such material and all copies thereof (including summaries, excerpts, and derivative works) to counsel for the Producing Party; or (ii) make a good-faith and reasonable effort to destroy all such Confidential or Attorneys' Eyes Only Discovery Material, and certify to that fact in writing to counsel for the Designating or Producing Party. However, counsel for the Parties will be entitled to retain court papers, trial transcripts, and attorney work product containing Confidential or Attorneys' Eyes Only Discovery Material, provided that such counsel, and employees of such counsel, will maintain the confidentiality thereof and will not disclose such court papers, trial transcripts, or attorney work product containing Confidential or Attorneys' Eyes Only Discovery Material to any person except under a court order or agreement by the Designating and Producing Party or except as otherwise required by law. All materials returned to the Parties or their counsel by the Court likewise will be disposed of in accordance with this paragraph.

25.     If any person in possession of Confidential or Attorneys' Eyes Only Discovery Material receives a subpoena or other compulsory process seeking the production or other disclosure of Confidential or Attorneys' Eyes Only Discovery Material the person neither produced nor designated (collectively, a "Demand"), the person will give written notice to counsel for the Designating and Producing Parties within three business days of receipt of such Demand (or if a response to the Demand is due in less than three business days, at least 24 hours prior to the deadline for a response to the Demand), identifying the Confidential or Attorneys' Eyes Only

Discovery Material sought and enclosing a copy of the Demand, and must object to the production

of the Confidential or Attorneys' Eyes Only Discovery Material on the grounds of the existence

of this Order. The burden of opposing the enforcement of the Demand will fall on the Designating

Party. Nothing herein will be construed as requiring the person receiving the Demand or anyone

else covered by this Order to challenge or appeal any order requiring production of Confidential

or Attorneys' Eyes Only Discovery Material covered by this Order, or to subject itself to any

penalties for noncompliance with any legal process or order, or to seek any relief from this Court

or any other court. Compliance by the person receiving the Demand with any court order directing

production under a Demand of any Confidential or Attorneys' Eyes Only Discovery Material will

not constitute a violation of this Order.

26. Absent a court order, no person who is not a party to the Litigation who receives

Confidential or Attorneys' Eyes Only Discovery Material as permitted under the terms of this

Order ("a Non-Party") will reveal any Confidential or Attorneys' Eyes Only Discovery Material

or the information contained therein, to anyone not entitled to receive such Confidential or

Attorneys' Eyes Only Discovery Material under the terms of this Order. In the event that

Confidential or Attorneys' Eyes Only Discovery Material is disclosed to any person other than in

the manner authorized by this Order, or that any information comes to the non-party's attention

that may indicate there was or is likely to be a loss of confidentiality of any Confidential or

Attorneys' Eyes Only Discovery Material, the non-party responsible for the disclosure or loss of

confidentiality will immediately inform the Designating and Producing Party of all pertinent facts

relating to the disclosure or loss of confidentiality, including, if known, the name, address, and

employer of each person to whom the disclosure was made. The non-party responsible for the

disclosure or loss of confidentiality will also make reasonable efforts to prevent disclosure of

Confidential or Attorneys' Eyes Only Discovery Material by each unauthorized person who receives the information.

27.     The production of any Discovery Material by any non-party is subject to and governed by the terms of this Order.

28.     If a Party violates this Order by intentionally releasing or otherwise disclosing Confidential or Attorneys' Eyes Only Discovery Material to persons or entities not entitled to such material under this Order or learns of the disclosure of such material and does not immediately inform the Designating and Producing Party, the Court may impose sanctions under Federal Rule of Civil Procedure 37(b)(2)(A)(i)-(vi).

29.     The Court will retain jurisdiction over all persons subject to this Order to the extent necessary to enforce any obligations arising hereunder or to impose sanctions for any violation thereof.


Dated: November 3, 2022

_s/  John F. Docherty_
JOHN F. DOCHERTY
United States Magistrate Judge

## EXHIBIT A

*Smartmatic USA Corp., et al., v. Lindell, et al.*, Case No. 22-cv-0098-WMW-JFD

I have read the Protective Order Dated _____, 2022 in this action (the "Order")

and undertake to access and use Discovery Material, Confidential Material, and Attorneys' Eyes

Only Material only as the Order permits.

Signed this ____ day of _____, 2022.

_____
[Name]